## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIC BUCKWALTER, | : | CIVIL NO: 4:14-CV-01311 |
| | : | |
| Petitioner, | : | |
| | : | (Judge Brann) |
| v. | : | |
| | : | (Magistrate Judge Schwab) |
| LANCASTER PROBATION & | : | |
| PAROLE, *et al.*, | : | |
| | : | |
| Respondent. | : | |

## REPORT AND RECOMMENDATION

### I. Introduction.

On April 1, 2011, in the Court of Common Pleas of Centre County, Pennsylvania, Petitioner Eric Buckwalter ("Buckwalter") was convicted of three counts of Possession of a Controlled Substance and one count each of Possession of Drug Paraphernalia and Possession with Intent to Deliver. *See doc. 1* at 1; *doc. 12* at 2; *doc. 12-2* at 12-13. He was sentenced to a term of two to four years imprisonment, plus probation. *See doc. 1* at 1; *doc. 12* at 1. After unsuccessfully challenging his judgment of sentence through post-trial motions, a direct appeal, and state collateral proceedings, Buckwalter filed, on July 8, 2014, a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("Petition"). In his counseled Petition, Buckwalter levies a due process challenge to the state trial court's jury instructions

and argues that because of the wording of those instructions, the jury's verdict was ambiguous and his sentencing was unlawful.  *Doc. 1* at 5.  For the reasons set forth below, we recommend denying his Petition.

## II. Background.

### A. The Trial.

At trial, the Commonwealth presented the following evidence.  Bruce Clara ("Clara"), a student at Pennsylvania State University, was operating as a confidential informant when he informed the police that Buckwalter, a fellow classmate at the University, was selling marijuana.  *Doc. 15-2* at 17-20, 22-23. Clara, who alleged that Buckwalter had offered to sell him marijuana, also informed the police that he believed Buckwalter was purchasing marijuana in larger quantities and then selling it in smaller quantities.  *Id.* at 22-23; *doc. 15-1* at 37-38.

On January 13, 2010, the police set up a controlled buy, using Clara as their confidential informant.[1]  *Doc. 15-1* at 35-36, 38.  Around 6:30 p.m. that day, Clara contacted Buckwalter and asked him, *via* text message, if he had any "greenery" to sell.  *Id.* at 38-43.  Buckwalter called Clara, explaining that Clara should not be sending him text messages of that nature, and instead, should be calling him.  *Id.* at

---

[1] As explained at trial, "[a] controlled buy is basically the use of a confidential informant to conduct a controlled purchase . . . of a drug from a particular suspect." *Doc. 15-2* at 17.

44-45.  Buckwalter, nevertheless, agreed to sell marijuana to Clara and instructed Clara to meet him later that night at his apartment complex in State College.  *See doc. 15-1* at 45-46.

Soon after, Clara met with the police in preparation for the controlled buy. *Id.* at 46.  Clara was strip-searched, given pre-recorded money to make the buy, and driven by the police to Buckwalter's apartment complex.[2] *Id.*  Although Buckwalter's apartment was located on the second floor, Buckwalter instructed Clara to meet him at a different apartment, which was located on the seventh floor. *Id.* at 47-48; *doc. 15-2* at 25, 28.  Clara met Buckwalter at the agreed-upon apartment and gave Buckwalter sixty dollars ($60) in pre-recorded money in exchange for approximately one gram of marijuana.  *Doc. 15-1* at 48-49; *doc. 15-2* at 24-25.

On February 18, 2010, the police set up a second controlled buy.  *See doc. 15-1* at 53; *doc. 15-2* at 35-36.  Clara, still acting as a confidential informant for the police, called Buckwalter asking him if he had any marijuana to sell and, if so,

---

[2] As further explained at trial, a confidential informant is strip-searched to ensure that he does not have any drugs or any of his own money hidden on him before he makes the controlled buy.  *Doc. 15-2* at 17.  And, the pre-recorded money is currency, which the police photocopy for the serial numbers and give to the informant to use during the controlled buy.  *Id.* at 18.  In the event that an arrest is made or a search warrant is executed, the police can cross-reference the pre-recorded money with the money that they ultimately seize from the suspect.  *Id.*

when he would be available to sell it. *Doc. 15-1* at 53. Buckwalter informed Clara that he had marijuana to sell and that he was available. *Id.*

Prior to going to Buckwalter's apartment for the controlled buy, Clara met with the police, where he was strip-searched, given pre-recorded money, and driven to Buckwalter's apartment complex. *Id.* On the way to the apartment complex, Buckwalter asked Clara to buy him a bag of ice—apparently, Buckwalter had recently undergone knee surgery. *Id.* at 54; *doc. 15-2* at 38. Clara agreed and bought Buckwalter a bag of ice.[3] *Doc. 15-1* at 54; *doc. 15-2* at 38.

Upon arriving at the apartment, Clara observed Buckwalter lying on the couch in the living room, with "some sort of devise [sic]" on his knee. *Doc. 15-2* at 41. Clara gave Buckwalter the bag of ice, talked with Buckwalter for a while, and then observed Buckwalter reach behind the couch and into a red gym bag, from which he pulled out a medium size jar of marijuana, a black electronic scale, and a small, sandwich bag. *Doc. 15-1* at 56-59. Buckwalter pulled some of the marijuana from the jar, weighed it on the scale, placed it in the small, sandwich

---

[3] This required Clara, and the detective with whom he was driving, to return to the police station. *Doc. 15-2* at 38-39. As explained by the detective, he had to re-photocopy the currency since purchasing the ice produced different denominations and serial numbers than what they originally started with for the controlled buy. *Id.*

bag, and gave it to Clara in exchange for fifty-eight dollars ($58) in pre-recorded money. *Doc. 15-1* at 59; *doc. 15-2* at 41.[4]

Based on the two previous controlled buys, the police applied for and ultimately executed a search warrant at Buckwalter's apartment. *Doc. 15-2* at 46, 49-50.  During their search, the police found the following items: (1) a two-by-three inch bag on top of a dresser containing marijuana (*id.* at 53-54); (2) Buckwalter's passport, which was located in a drawer of that same dresser (*id.* at 56);  (3) a small, red gym bag located on the living room floor next to the couch (*id.* at 57);  (4) a mason jar containing a bag of marijuana, which was found inside the red gym bag (*id.* at 57); (5) a digital, electronic scale, containing marijuana residue, which was also found inside the gym bag (*id.* at 58); (6) a six-by-three inch bag that said "100 Count" and contained at least thirty smaller two-by-three inch bags, which was also found inside the red gym bag (*id.* at 59); (7) a 12-by-16 inch vacuum-type sealed bag, emanating an odor of marijuana and containing marijuana residue, which was also found inside the red gym bag (*id.* at 60); (8) a large, glass bong containing marijuana residue that was on the floor in the living

---

[4] Although the first controlled buy for marijuana was sixty-dollars ($60), the bag of ice that Clara bought on the way to the second controlled buy cost one dollar and eighty-nine cents ($1.89). *Doc. 15-2* at 39. Thus, Buckwalter graciously contributed the cost of the ice to the overall marijuana purchase. *See id.* at 39-41. In fact, he even allowed Clara to keep the remaining eleven cents (*see id.* at 41), hence, the total price of fifty-eight dollars ($58) for the marijuana during the second controlled buy.

room, next to the couch (*id.* at 60); (9) a small cellophane wrapper on the coffee table, containing five blue pills (amphetamines) (*id.* at 61-62); and (10) two hundred and thirty-five dollars ($235) in U.S. currency, which was found inside a desk in the living room, fifty-two dollars ($52) of which was later corroborated as the pre-recorded money that Clara used during the controlled buy on February 18, 2010 (*id.* at 63, 65-66).

Following the Commonwealth's evidence, the defense called several witnesses, among which, was Buckwalter himself. *Doc. 15-3* at 18. Although Buckwalter admitted to knowing Clara, having classes with him, and meeting up with him outside of those classes, Buckwalter denied texting, calling, and selling drugs to him on the relevant dates in question, namely, January 13, 2010, and February 18, 2010. *Id.* at 18-24, 27. Buckwalter also denied being a person who is constantly on his phone and, in fact, he testified to losing several of his cell phones. *Id.* at 20-21. Buckwalter's father, who also testified at trial, remarked that he has had to replace several of Buckwalter's cell phones over the years. *Id.* at 11-12.

In addition, Buckwalter testified that he underwent invasive knee surgery on February 17, 2010, and that he needed ice for the machine that was wrapped around his leg. *Id.* at 24-26, 28. Apparently, the machine circulated cold water through tubes, which helped reduce the swelling in his knee. *Id.* at 28. Buckwalter

testified, however, that it was his friend "Betch," not Clara, who brought him ice on February 18, 2010, the day after his knee surgery. *Id.* at 27-29.

Buckwalter further testified that on February 19, 2010, the date in which the police searched his apartment, he continued to recover and lay around all day. *Id.* at 29. With respect to the search itself, Buckwalter admitted to owning the red gym bag the police found in the living room. *See id.* at 38. Buckwalter also testified, however, that he thought there was "nothing" in the bag at the time of the search. *Id.* Although, once he saw the police pull the jar of marijuana out of the bag, he got "concerned" and tried to "cover" for his roommate, hence why he informed the police that the marijuana was "for personal use." *Id.* at 40. Buckwalter also informed the police that the money they recovered from the desk drawer in the living room (which consisted of the pre-recoded police money), was money he received from his "Grandma." *Id.* at 41.[5]

Following closing arguments, the trial court judge instructed the jury on the relevant law. *Id.* at 92-104. And, pertinent to the instant Petition, the trial court judge instructed the jury on the crime of Possession with Intent to Deliver—a crime of which he was ultimately convicted—as follows:

---

[5] In essence, it appears that Buckwalter's defense was that he was set-up on both of the controlled buys and that neither the drugs nor drug paraphernalia belonged to him.

In this case the defendant is charged with possession of a controlled substance and a separate crime of possession with intent to manufacture or deliver a controlled substance.

The defendant is charged with unlawfully possessing marijuana, an amphetamine and possessing marijuana with the intent to deliver it.

Let me first explain the basic difference between these two crimes.  The crime of possession is what it says, the act of possessing a controlled substance for an illegal purpose such as personal use.

The crime of possession with intent to deliver requires something more.  A controlled substance must be possessed and it must be possessed not for personal use but for the specifically intended purpose of ***selling or delivering*** it to another person or persons.

*Id.* at 94-95 (emphasis added).

Although Buckwalter did not object to these instructions on the record, he is now arguing that because of the wording of those instructions, the jury's guilty verdict as to the charge of Possession with Intent to Deliver was ambiguous and his sentencing was unlawful.  *Doc. 1* at 5.   In particular, he argues that the trial court ambiguously defined the term "deliver" when it instructed the jury.  *See doc. 13* at 1-2 ("[Buckwalter] was found to have possessed fewer than four grams of marijuana with the intent to deliver, with deliver defined to the jury as being *either* to sell or to deliver [share/transfer without payment].") (emphasis and brackets in original).   Because of this ambiguous instruction, he contends that it is unclear whether the jury found that he possessed the marijuana with the intent to sell it, or whether he possessed the marijuana with the intent to deliver it without payment.

8

*See id.* According to Buckwalter, if the jury determined he intended to sell the marijuana, then he faced a two year mandatory felony sentence; whereas, if the jury determined he only intended to deliver the marijuana, without payment, then his maximum sentence was thirty days as a misdemeanor. *Id.* Thus, relying on these contentions, Buckwalter argues that the jury returned an ambiguous verdict, which, in turn, required the judge to "guess" a finding—whether Buckwalter intended to sell or deliver the marijuana. *Id*. at 4.

### B. The Verdict and Sentencing.

On April 1, 2011, the jury acquitted Buckwalter of all charges stemming from the first controlled buy that took place on January 13, 2010, but convicted him of Possession of a Controlled Substance and, as previously mentioned, Possession with Intent to Deliver, stemming from the second controlled buy that took place on February 18, 2010; and Possession of a Controlled Substance and Possession of Drug Paraphernalia, stemming from the search that was conducted on February 19, 2010. *See doc. 12-2* at 12-13.

The following month, on May 17, 2011, the trial court imposed the Drug-Free School Zone enhancement[6] and sentenced Buckwalter to two to four years

---

[6] Pennsylvania's Drug-Free School Zones statute provides, in pertinent part, as follows:

> (a) General rule.-A person 18 years of age or older who is convicted in any court of this Commonwealth of a violation of

imprisonment for the Possession with Intent to Deliver conviction, plus probation for the other remaining convictions.   *See doc. 12-2* at 2-10.

## C. Buckwalter's Direct Appeal.

Following sentencing, Buckwalter timely filed a post-sentence motion to "arrest judgment, vacate sentence, and otherwise mold the jury's verdict."   *Doc. 15* at 20.  In support of his motion, Buckwalter alleged the following: (1) the jury convicted him of Possession with Intent to Deliver marijuana; (2) the trial court instructed the jury that in order to convict him of this offense, "he must have

---

> section 13(a)(14) or (30) of the act of April 14, 1972 (P.L. 233, No. 64 [PA. STAT. ANN. tit. 35, § 780-113(a)(14) or (30)]) known as The Controlled Substance, Drug, Device and Cosmetic Act, shall, if the delivery or possession with intent to deliver of the controlled substance occurred within 1,000 feet of the real property on which is located a public, private or parochial school or a college or university or within 250 feet of the real property on which is located a recreation center or playground or on a school bus, be sentenced to a minimum sentence of *at least two years* of total confinement, notwithstanding any other provision of this title, The Controlled Substance, Drug, Device and Cosmetic Act or other statute to the contrary. The maximum term of imprisonment shall be four years for any offense:
>
> (1) subject to this section; and
>
> (2) for which The Controlled Substance, Drug, Device and Cosmetic Act provides for a maximum term of imprisonment of less than four years.

18 PA. CONS. STAT. ANN. § 6317(a) (emphasis added).  For ease of reference, we will hereinafter refer to this mandatory drug-free school zone enhancement as the "School Zone Enhancement."

possessed the marijuana not for personal use, but for the specifically intended purpose of selling or delivering it to another person or persons;" (3) the trial court further instructed the jury that the term "delivery could be the result of a sale to another person or the transfer to another person." *Id.* at 22.   Based on these allegations, Buckwalter argued that the jury's verdict was ambiguous as to whether they found beyond a reasonable doubt that he intended to "sell" the marijuana *or* whether he intended to "transfer it without selling it."   *Id.*   According to Buckwalter, if the jury found he merely intended to "transfer" the marijuana without selling it, then he committed an offense in violation of PA. STAT. ANN. tit. 35, § 780-113(a)(31) (Possession of a Small Amount of Marijuana with Intent to Distribute), rather than PA. STAT. ANN. tit. 35, § 780-113(a)(30) (Possession with Intent to Deliver), the crime of which he was charged and ultimately convicted.[7] *Id.*

The Controlled Substance, Drug, Device and Cosmetic Act of April 14, 1972 ("Act"), Pub.L. No. 233, No. 64, §§ 1 *et seq.* (codified as amended at PA. STAT. ANN. tit. 35, §§ 780–101 *et seq.* (1977 & Supp. 1991)), defines both of these offenses.   According to § 780-113(a)(30) of the Act, Possession with Intent to Deliver occurs under the following circumstances:

---

[7] Significantly, however, the Commonwealth did not charge him with a violation of PA. STAT. ANN. tit. 35, § 780-113(31) (Possession of a Small Amount of Marijuana with Intent to Distribute).   *See doc. 15-1* at 19-21; *see also doc. 12-2* at 12-13.

11

(a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:

* * * *

(30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

PA. STAT. ANN. tit. 35, § 780-113(a)(30) (West).    The terms "deliver" and "delivery," as used in this section, are defined by the Act as "the actual, constructive, or attempted transfer from one person to another of a controlled substance, other drug, device or cosmetic whether or not there is an agency relationship."   PA. STAT. ANN. tit. 35, § 780-102.    "The offensive conduct is simply the 'actual, constructive or attempted transfer from one person to another' of the prohibited substance."   *Commonwealth v. Metzger*, 372 A.2d 20, 22 (Pa. Super. Ct. 1977).   Thus, under the Act, it is not necessary "to establish that an exchange of money took place or some other arrangement of barter transpired." *Id.*; *see also Commonwealth v. McFarland*, No. 1489 EDA 2012, 2013 WL 11277648, at *2 (Pa. Super. Ct. 2013) ("To constitute a delivery, the transfer need not involve profit or the exchange of money, but need only involve the conveyance of the controlled substance.") (citations omitted).   "[A]ll that is necessary is that the transfer be between two people."   *Metzger*, 372 A.2d at 22; *see generally*

12

*Commonwealth v. Cameron*, 372 A.2d 904, 907 (Pa. Super. Ct. 1977) ("Transfer is not defined in the Act; however, taking the commonly accepted meaning of the word, as we must . . . it means '[t]o convey or remove from one . . . person to another; pass or hand over from one to another . . . .'") (internal citations and quoted source omitted).

According to § 780-113(a)(31) of the Act, Possession of a Small Amount of Marijuana with Intent to Distribute occurs under the following circumstances:

> (a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:
>
> \*   \*   \*   \*
>
> (31) Notwithstanding other subsections of this section, (i) the possession of a small amount of marihuana [sic] only for personal use; (ii) the possession of a small amount of marihuana [sic] with the intent to distribute it but not to sell it; or (iii) the distribution of a small amount of marihuana [sic] but not for sale.
>
> For purposes of this subsection, thirty (30) grams of marihuana [sic] or eight (8) grams of hashish shall be considered a small amount of marihuana [sic].[8]

PA. STAT. ANN. tit. 35, § 780-113(a)(31) (West).  The term "distribute," as used in this section, and as defined by the Act, "means to deliver other than by administering or dispensing a controlled substance, other drug, device or cosmetic."  PA. STAT. ANN. tit. 35, § 780-102.

---

[8] The parties do not dispute that Buckwalter possessed less than 30 grams of marijuana.

13

The significance between these two offenses, Buckwalter contended, was that a violation of § 780-113(a)(31) of the Act (Possession of a Small Amount of Marijuana with Intent to Distribute) is an ungraded misdemeanor with a statutory maximum of 30 days; whereas, a violation of § 780-113(a)(30) (Possession with Intent to Deliver) is an ungraded felony with a statutory maximum of five years. *Doc. 15* at 23.

Thus, on the basis of the foregoing, Buckwalter argued that because the jury's verdict was ambiguous, it should be resolved in his favor. *Id.* Resolving the ambiguous verdict in his favor, Buckwalter pressed, would require a finding that he merely intended to transfer the marijuana without payment. *Id.* As such, Buckwalter asserted that he could only be convicted of Possession of a Small Amount of Marijuana under § 780-113(a)(31) of the Act, to which the School Zone Enhancement is inapplicable. *Id.*

On September 22, 2011, the trial court denied Buckwalter's post-sentence motion. *Doc. 17-1* at 2-6. In support of its denial, the trial court explained, because "[t]he term of imprisonment for a Possession with Intent to Deliver conviction is the same . . . regardless of whether the jury believed a sale or a transfer occurred[,]" the verdict slip was not ambiguous and there was no need for the jury to making a specific finding regarding the sale or transfer of marijuana. *Id.* at 5. Thus, per the trial court, Buckwalter's challenge was really about

"whether [it] erred in failing to instruct the jury on Possession of a Small Amount of Marijuana[, under § 780-113(a)(31) of the Act]." *Id.* As pointed out by the trial court, however, Buckwalter was not charged with this crime, and neither party requested such an instruction. *Id.* As also pointed out by the trial court, it felt "constrained to uphold [Buckwalter's] sentence . . . because he waived his ability to object to the jury charge by not objecting either during or after the charge." *Id.* (citing *Commonwealth v. Brown*, 359 A.2d 393, 397 (Pa. 1976). Consequently, the trial court denied Buckwalter's post-sentence motion. And, although Buckwalter filed a motion for reconsideration of that denial, the trial court similarly denied his motion for reconsideration. *Doc. 15* at 13-18.

Following the denial of his post-sentence motions, Buckwalter timely appealed his judgment of sentence, raising one issue for the Pennsylvania Superior Court's review: whether the Court imposed an illegal sentence when the jury's verdict was ambiguous as to an essential element of the crime charged. *See doc. 12-2* at 47-48. In support, Buckwalter argued, as he did in his post-sentence motion, that the jury's verdict convicting him of Possession with Intent to Deliver in violation of § 780-113(a)(30) of the Act was ambiguous as to whether the jury believed beyond a reasonable doubt that he sold or merely distributed the marijuana. *Id.* at 48. He further argued that because Pennsylvania law requires an ambiguous jury verdict to be resolved in the defendant's favor, the trial court

should have imposed a sentence consistent with the lesser offense of Possession of a Small Amount of Marijuana with Intent to Distribute under § 780-113(a)(31) of the Act. *Id.* Thus, just as he did in his post-sentence motion, Buckwalter urged the Superior Court to vacate his Possession with Intent to Deliver sentence and remand the matter for resentencing consistent with a conviction under § 780-113(a)(31). *Id.*

The Superior Court ultimately disagreed with Buckwalter's contentions. After setting forth the relevant law, the court observed that the Commonwealth did not charge Buckwalter under § 780-113(a)(31) of the Act. *Id.* at 54. The Superior Court also observed that Buckwalter did not ask for a jury charge on the "sell," "deliver," "distribute" distinction, nor did he object on the record to the trial court's Possession with Intent to Deliver jury instruction. *Id.* As such, the Superior Court determined that Buckwalter waived his challenge to the trial court's use of "delivery" and "sale" in its instructions to the jury. *Id.*

The Superior Court also determined that the evidence of record did not warrant a jury instruction under § 780-113(a)(31) of the Act. *Id.* As explained by the court, the Commonwealth's evidence at trial did not support either an instruction or a conclusion that Buckwalter possessed a small amount of marijuana with the intent to distribute but not sell it, *or* distributed a small amount of marijuana but did not sell it. *Id.* Consequently, the court concluded that

16

Buckwalter was not entitled to relief under the facts of his case and affirmed the trial court's judgment of sentence. *Id.* at 55.

Although Buckwalter also filed a petition for allowance of appeal with the Pennsylvania Supreme Court, that petition was denied on December 27, 2012. *Doc. 12-2* at 61. Buckwalter did not seek review from the Supreme Court of the United States. *Doc. 1* at 3.

### D. Buckwalter's Collateral Proceedings.

After litigating on direct appeal, Buckwalter collaterally attacked his judgment of sentence by filing a petition for relief pursuant to the Post-Conviction Relief Act ("PCRA"), 42 PA. CON. STAT. ANN. §§ 9541-46 (West). In his PCRA petition, Buckwalter argued, among other things, that he "was deprived of the effective assistance of counsel when trial counsel failed to assert that the failure of the jury to find 'delivery by sale' verses 'distribution of a small amount' triggers application of [§ 780-113(a)(31) of the Act]." *Doc. 12-2* at 66-67.

According to the PCRA court, this argument had been previously litigated before the Superior Court. *Doc. 12-2* at 80-82. In support, the PCRA court recounted the Superior Court's findings on direct appeal, including the finding that Buckwalter, through counsel, had neither objected on the record to the trial court's Possession with Intent to Deliver instruction, nor objected to the trial court's use of "delivery" and "sale" in its instruction. *Id.* at 82. The PCRA court, in so

17

recounting, ultimately agreed with the Superior Court's holding that Buckwalter's failure to raise these objections resulted in a waiver of the underlying issues on appeal.  *Id.* at 81-82.  The PCRA court also agreed with the Superior Court's additional finding that the evidence of record did not warrant a jury instruction § 780-113(a)(31) of the Act.  *Id.* at 82.  As such, the PCRA court concluded that Buckwalter was not entitled to PCRA relief.  *Id.* at 82-83.

### E. Buckwalter's § 2254 Petition.

Following the denial of his PCRA petition, Buckwalter filed, on July 8, 2014,[9] the instant Petition, wherein he raises only one ground for relief:

> **GROUND ONE**: Denial of Due Process and the right to sentencing based on specific jury findings when lower court ignored ambiguous verdict . . . . My jury convicted me of intending to sell or deliver a very small, personal use amount of marijuana, with "sell" a different and more severe offense than "deliver."  My judge sentenced me for intent to sell despite the fact that the jury could have understood that such a small amount of marijuana might be gifted or shared with another rather than sold.

*Doc. 1* at 5.  The respondent,[10] on September 24, 2014, filed a response to the Petition (*doc. 12*), along with a memorandum of law (*doc. 12-1*) and various

---

[9] Shortly after the Petition was filed, the Court notified Buckwalter of his right to withdraw the Petition so that he could file an all-inclusive petition in accordance with *Mason v. Meyers*, 208 F.3d 414 (3d Cir. 2000). *See doc. 4*. In response, Buckwalter elected not to withdraw the Petition, but instead, for the Court construe and rule upon the Petition pursuant to 28 U.S.C. § 2254. *See doc. 5*.

underlying documents (*see doc. 12-2*),[11] arguing that the sole ground in the Petition does not entitle Buckwalter to relief under 28 U.S.C. § 2254.  The following day, Buckwalter filed a reply (*doc. 13*) to the respondent's memorandum of law.  Thus, the Petition is fully briefed and ripe for the Court's consideration.

## III. Discussion.

Here, the sole ground for relief in the instant Petition was disposed of by the Pennsylvania Superior Court on the basis of waiver.  *See doc. 12-2 at 48, 54*.  As a result, it may be that this Court could deny Buckwalter's sole ground for relief as procedurally defaulted.  Although the respondent fails to raise the issue of procedural default (*see generally doc. 12-1*), the respondent's failure to do so does not preclude the Court from considering this issue.  Indeed, the Court has "the authority to raise the issue of procedural default *sua sponte*," (*Evans v. Secretary Pennsylvania Dept. of Corr.*, 645 F.3d 650, 656 n.12 (3d Cir. 2011) (citing

---

[10] The Pennsylvania Attorney General and the District Attorney of Centre County are not proper respondents in this habeas action.  "A writ of habeas corpus shall be directed to the person having custody of the person detained[,]" *Latshaw v. Pennsylvania Bd. of Prob. & Parole*, No. 4:09-CV-2541, 2010 WL 1780018, at *2 (M.D. Pa. Apr. 27, 2010) (citing 28 U.S.C. § 2242 and § 2243), which in the instant matter, is Lancaster Probation and Parole. *See doc. 1* at 1 (representing to the Court that he is in the custody of Lancaster Probation and Parole).  Thus, Lancaster Probation and Parole is the proper respondent in this habeas action.

[11] We subsequently directed the respondent to file additional underlying documents.  *See docs. 14*; *16*.  Those documents can be found at *docs. 15*; *15-1*; *15-2*; *15-3*; *17-1*.

*Szuchon v. Lehman*, 273 F.3d 299, 321 n.13 (3d Cir. 2001)), as long as Buckwalter has been given fair notice and an opportunity to respond and is not prejudiced. *See Woodard v. Thomas*, No. CV 14-80 ERIE, 2016 WL 1298622, at *3 (W.D. Pa. Apr. 4, 2016) (citing *Day v. McDonough*, 547 U.S. 198, 205-210 (2006)). We need not consider, however, the thorny issue of procedural default since Buckwalter's Petition is more efficiently disposed of on the merits.

As previously stated, Buckwalter raises a due process challenge to the trial court's ambiguous jury instructions, which in turn, resulted in an ambiguous jury verdict and unlawful sentencing. *See doc. 1*; *doc. 13*. The respondent counters, however, that Buckwalter was not convicted on an ambiguity. *Doc. 12-1* at 5. Instead, the respondent maintains that Buckwalter was charged with Possession with Intent to Deliver marijuana, the trial court rendered the standard instruction for that charge, and the jury ultimately convicted him of that offense. *Id.* at 9. Thus, according to the respondent, the jury was not given an "either/or" choice; rather, the only choice the jury was given was guilty or not guilty. *Id.* And, based upon the evidence presented by the Commonwealth, including the marijuana, the digital scale, the plastic baggies, and the pre-recorded police money that was found in Buckwalter's possession, the respondent argues there was indeed ample evidence to support the jury's guilty conviction as it pertains to the Commonwealth's Possession with Intent to Deliver charge. *Id.* at 8-9.

Our review[12] of the state court's jury instructions is limited to those instances where such instructions violate the defendant's due process rights.  *See Echols v. Ricci*, 492 F. App'x 301, 312 (3d Cir. 2012) ("The only question for us [in reviewing an allegedly erroneous jury instruction is] whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." (quoting *Estelle v. McGuire*, 502 U.S. 62, 72–73 (1991))) (brackets in original).  The Due Process Clause is violated only where "the erroneous instructions have operated to lift the burden of proof on an essential element of an offense as defined by state law."  *Smith v. Horn*, 120 F.3d 400, 416 (3d Cir. 1997); *see also In re Winship*, 397 U.S. 358, 364 (1970) ("[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."); *Sandstrom v. Montana*, 442 U.S. 510, 523 (1979) (holding that jury instructions suggesting a jury may convict without proving each element of a crime beyond a

---

[12] Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), "federal courts are to review a state court's determinations on the merits only to ascertain whether the state court reached a decision that was 'contrary to' or involved an 'unreasonable application' of clearly established Supreme Court law, or if a decision was based on an 'unreasonable determination' of the facts in light of the evidence presented."  *Fahy v. Horn*, 516 F.3d 169, 189 n.20 (3d Cir. 2008) (quoting 28 U.S.C. § 2254(d)).  When the state court has not reached the merits of a claim, however, AEDPA's deferential standards do not apply. *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001).  Because we see no adjudication on the merits, AEDPA's deferential standards do not apply here.  Thus, we conduct a *de novo* review of Buckwalter's due process challenge.  *See id.*

reasonable doubt violate the constitutional rights of the defendant).   Accordingly,

even if there is "ambiguity, inconsistency, or deficiency in the instruction, such an

error does not necessarily constitute a due process violation.   Rather, the defendant

must show both that the instruction was *ambiguous* and that there was a *reasonable*

*likelihood* that the jury applied the instruction in a way that relieved the State of its

burden of proving every element of the crime beyond a reasonable doubt."

*Waddington v. Sarausad*, 555 U.S. 179, 190–91 (2009) (emphasis added; internal

citations and quotations omitted).   And, finally, the specific jury instruction "may

not be judged in artificial isolation, but must be viewed in the context of the overall

charge.   If the charge as a whole is ambiguous, the question is whether there is a

reasonable likelihood that the jury has applied the challenged instruction in a way

that violates the Constitution."   *Middleton v. McNeil*, 541 U.S. 433, 437 (2004)

(quotations omitted).

Here, having reviewed the record, we conclude that Buckwalter's due

process challenge to the state trial court's jury instruction—and, in turn, to the

jury's verdict and the trial court's sentencing thereof—does not warrant habeas

relief.   For ease of reference, we recite the challenged jury instruction once more:

> In this case the defendant is charged with possession of a
> controlled substance and a separate crime of possession with
> intent to manufacture or deliver a controlled substance.

> The defendant is charged with unlawfully possessing marijuana, an amphetamine and possessing marijuana with the intent to deliver it.
>
> Let me first explain the basic difference between these two crimes. The crime of possession is what it says, the act of possessing a controlled substance for an illegal purpose such as personal use.
>
> The crime of possession with intent to deliver requires something more. A controlled substance must be possessed and it must be possessed not for personal use but for the specifically intended purpose of ***selling or delivering*** it to another person or persons.

*Doc. 15-3* at 94-95 (emphasis added).

In his Petition and traverse, Buckwalter is parsing the specific instruction, "***selling or delivering***," to argue that this instruction might have led the jury to believe that he was guilty of Possession with Intent to Deliver even if the jury determined that he only had the intent to "deliver" or "transfer" the marijuana to another person "without payment." *See doc. 13* at 1-2. In other words, Buckwalter entreats the Court to read into this specific instruction and into the pertinent Act, that if the jury did not determine he possessed the marijuana with the intent to sell the marijuana to Clara, the confidential informant, then he cannot be guilty of Possession with Intent to Deliver. We, however, fail to see the merit of this argument.

In order to secure a conviction for Possession with Intent to Deliver, "the Commonwealth must prove beyond a reasonable doubt that the defendant

possessed a controlled substance and did so with the intent to deliver it." *Commonwealth v. Bricker*, 882 A.2d 1008, 1015 (Pa. Super. Ct. 2005); *see* PA. STAT. ANN. tit. 35, § 780-113(a)(30) (West).   The term "deliver" is defined as "the actual, constructive, or attempted transfer from one person to another of a controlled substance, other drug, device or cosmetic whether or not there is an agency relationship."   PA. STAT. ANN. tit. 35, § 780-102.   Thus, it is not necessary to establish that "an exchange of money took place or some other arrangement of barter transpired;" rather, all that is necessary is the transfer of the controlled substance from one person to another.   *Metzger*, 372 A.2d at 22; *see also McFarland*, 2013 WL 11277648, at *2 (explaining that the transfer of the controlled substance need only involve the conveyance of the controlled substance, not the profit or the exchange of money).   Therefore, whether the jury believed beyond a reasonable doubt that Buckwalter possessed the marijuana with the intent to transfer it in exchange for money, *or* whether he possessed the marijuana with the intent to transfer it without an exchange of money, is of no import to this Court; both fall squarely within the confines of § 780-113(a)(30) of the Act, Possession with Intent to Deliver.

Even assuming Buckwalter could show that the trial court's jury instructions were, in fact, ambiguous, we cannot conclude that the instructions were so ambiguous as to cause a federal constitutional violation.   Specifically, we find that

there is no "reasonable likelihood" that the challenged jury instruction caused Buckwalter's jury to apply that instruction in such a way as to relieve the Commonwealth of its burden to prove every element of the crime beyond a reasonable doubt. *See Sarausad*, 555 U.S. at 190–91 (instructing that even if there is "ambiguity, inconsistency, or deficiency in the instruction, such an error does not necessarily constitute a due process violation[;]" instead, "the defendant must show both that the instruction was ambiguous and that there was a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt.") (quotations and internal citations omitted).

Moreover, our review of the record affirmatively reflects that the trial court impressed upon the jury the importance of finding *every* element of the crime beyond a reasonable doubt. *See doc. 15-3* at 98 (charging the jury that in order for Buckwalter to be convicted of Possession with Intent to Deliver, "the following four elements must be proved beyond a reasonable doubt[:]" (1) that the item (i.e., the marijuana) is a controlled substance; (2) that the item was possessed by Buckwalter; (3) that Buckwalter was aware of the item's presence and the fact that the item is a controlled substance; and finally, (4) that Buckwalter possessed the item with "the specific intent or goal of delivering the item to another"); *see also id.* at 98-99 ("If the Commonwealth has proved all of these elements beyond a

reasonable doubt, then you should find [Buckwalter] guilty of [Possession with Intent to Deliver].  If the Commonwealth has failed to prove at least one element of this offense beyond a reasonable doubt, then you must find [Buckwalter] not guilty.").

Thus, although Buckwalter has loosely asserted a due process challenge in his Petition, he has wholeheartedly failed to demonstrate how, under the facts of this case, the jury instructions were so ambiguous as to cause a federal constitutional violation.  In light of this failure, we have conducted a thorough review of the record and, given the overwhelming evidence presented at trial, we conclude that the jury simply reached a unanimous decision that the Commonwealth had proved Buckwalter guilty beyond a reasonable doubt of Possession with Intent to Deliver marijuana.[13]

---

[13] Finally, we note that even though Buckwalter asserts that he is challenging his sentence, and not the trial court's jury instructions, the crux of his argument is expressly grounded in how the trial court defined the term "deliver."  *See doc. 13* at 1-2. Because he has not shown that the trial court's instructions were ambiguous, we find his arguments, as to sentencing, to be untenable.  *See doc. 13* at 3 (arguing that the trial court judge "could not have known which act the jury selected and thus was without power, under the United States Constitution, to arbitrarily select the greater").  There is simply no basis upon which we can conclude that the trial court judge "guess[ed]" that an essential element of Possession with Intent to Deliver had been proved when he sentenced Buckwalter.  *See doc. 13* at 7.  There is similarly no basis upon which we can conclude that the trial court judge selected the "increased sentence."  *See id.*  To further illustrate our point, we turn to *Commonwealth v. Riley*, 811 A.2d 610 (Pa. Super. Ct. 2002), a case cited by both parties that we regard as a material distinction from the one presented before us here.  In *Riley*, the trial court judge instructed the jury that they could find the

## C. Conclusion.

To conclude, Buckwalter has not shown that the trial court's jury instructions, and thus, the jury's verdict, were ambiguous. Even if he could make such a showing, that is not enough. He must also show that there is a "reasonable likelihood" that the challenged jury instruction caused Buckwalter's jury to apply that instruction in such a way as to relieve the Commonwealth of its burden to prove every element of the crime beyond a reasonable doubt. Buckwalter has not done this. Thus, under these circumstances, we recommend denying the instant Petition.

## IV. Recommendation.

For the foregoing reasons, **IT IS RECOMMENDED** that Buckwalter's petition for a writ of habeas corpus (*doc. 1*) be **DENIED**.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

---

defendant guilty of conspiracy, as a general matter, if they determined that he conspired to commit burglary "and/or" theft. *Id.* at 618. While the jury may have ultimately found the defendant guilty of conspiracy to commit burglary or theft, the verdict slip did not provide for a specific finding; instead, it only provided for "Criminal Conspiracy." *Id.* Because it was impossible to draw specific conclusions from the general verdict, the Superior Court determined, on appeal, that it was likewise impossible to tell which underlying crime the jury determined the defendant conspired to commit. *Id.* at 619. Thus, the Superior Court concluded that there was no basis for the trial court to find the defendant guilty of the more serious conspiracy offense—conspiracy to commit burglary. *Id.* As such, the Superior Court concluded that the trial court was obligated to sentence the defendant to the lesser conspiracy offense—conspiracy to commit theft. *Id.*

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen  (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


Submitted this **7th** day of **December, 2016**.

> *S/ Susan E. Schwab*
> Susan E. Schwab
> United States Magistrate Judge